Rosy Kunes et al., Appellees, v. Sovereign Camp, Woodmen of the World, Appellant.

Filed May 15, 1923.    No. 22367.

1. Insurance: Agency. "Where the by-laws of a fraternal beneficiary association authorize the clerk of a local camp to collect arrearages from members who have been suspended for nonpayment of assessments, to restore their names to the membership list, and to report reinstatements to the soverign camp, he is the agent of the association in performing those duties." *Henton v. Sovereign Camp, W. O. W.*, 87 Neb. 552.

2. ———: Reinstatement: Estoppel. "A fraternal beneficiary association may be bound by the action of a local camp clerk who collects arrearages from a member suspended for nonpayment of assessments and restores his name to the membership list without demanding or receiving a health certificate required by the by-laws, where the clerk acts with full knowledge that the member is sick at the time, and where there is no fraud on the latter's part." *Henton v. Sovereign Camp, W. O. W.*, 87 Neb. 552.

3. ———: By-Laws: Increase in Assessments. Where a regularly enacted by-law of a fraternal beneficiary association provides for the payment of an increased rate of assessments by its members after January 1, 1920, and further provides that members who had become such before that date by continuing to pay at the prior rate thereby elected to annul the provision in the certificate calling for the payment by the association of $100 for a monument, *held,* such by-law is reasonable; that a member by continuing to pay at the old rate thereby forfeited his right to monument benefits.

Appeal from the district court for Colfax county:

FREDERICK W. BUTTON, JUDGE. *Remanded, with directions.*

*De E. Bradshaw* and *George W. Wertz,* for appellant.

*W. C. Hronek* and *W. I. Allen, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and GOOD, JJ.

DAY, J.

This is an action on a fraternal beneficiary certificate to recover $1,000 for life insurance, and an additional sum of $100 for a monument. The certificate was issued by the defendant, a fraternal beneficiary association, on October 3, 1903, to Jendrich Studnica, who died May 6, 1920. The plaintiffs are children of the insured, and are the beneficiaries named in the certificate. The defendant denied liability on the ground that the certificate was forfeited by the failure of the insured to pay the assessments as provided in the by-laws of the association, which it is alleged were a part of the insurance contract. With respect to the provisions of the certificate relating to the payment of $100 for a monument, it was specially pleaded that the insured had consented to an annulment of that part of the contract by paying assessments at the old rate, as provided might be done by the provisions of certain by-laws enacted by the sovereign camp of the association in 1919. The reply pleaded a waiver of the forfeiture, and also a general denial. A jury was waived, and trial was had to the court, resulting in a judgment in favor of the plaintiffs. As orginally entered the judgment was for $1,000 with interest from May 6, 1920, and the additional sum of $100 for a monument, as provided in the certificate, making a total of $1,183. On considering the defendant's motion for a new trial, the court became convinced that under the by-laws of the association, and the facts presented, the insurance should be scaled down, and the judgment was reduced to $155. The judgment as

finally entered was for $1,028. From this judgment defendant appeals.

It appears that the defendant is a fraternal beneficiary association, which, in addition to other features, provides insurance for its members. A part of its general plan is carried on through local or subordinate camps. The insured was a member of one of these subordinate camps, known as "Zapadni Dub Camp No. 17," located at Dodge, Nebraska. To retain his membership and keep his insurance, the by-laws of the association, which were a part of his agreement, obligated him to pay certain monthly assessments. The by-laws provided that the assessments for each month were payable on or before the first day of the following month, and that if a member failed to pay his assessments within that time he should stand suspended, and during such suspension all rights under his certificate were void. The by-laws also provided that a suspended member might be reinstated on certain conditions, among them the payment of all assessments in arrears, and the furnishing of a certificate of good health.

It appears that at the biennial session of the sovereign camp of defendant association, held in July, 1919, certain by-laws were enacted and others amended, which became effective December 31, 1919. The effect of these new by-laws was to raise the assessments upon all members commencing January 1, 1920.

Under these new by-laws members who became such prior to January 1, 1920, had the option of continuing to pay assessments at the old rate. These by-laws provided in substance that, if a member continued to pay at the old rate, he thereby elected to have the amount of insurance named in his certificate reduced as provided in a table attached to the by-laws. This reduction as applied to the facts in the case at bar amounted to $155. The adoption of the higher rate of assessment, which no doubt was necessary, proved to be very unpopular. When the new rate became effective the insured, together with

22 other members of the Zapadni Dub Camp, refused to pay the assessments at either the old rate or the new rate, and were suspended. The insured was suspended February 3, 1920. The clerk of the local camp, acting under the direction of the sovereign camp, made special efforts to induce the suspended members to pay their assessments and be reinstated. He called upon the insured and also talked with insured's son (not the beneficiary in the certificate) and induced him to pay up his father's assessments. On March 30, 1920, the son paid the assessments for the months of January, February, and March, and also arranged with the clerk for the payment of subsequent assessments, and the insured was reinstated. The clerk promptly remitted the amount of the assessments for the months of January, February, and March to the sovereign camp, as having been paid by the insured. The defendant accepted the assessments and retained the same, together with two subsequent assessments, until the date of the trial in July, 1921, when it was tendered back. At the time the payment was made and the insured reinstated no health certificate was demanded by the clerk of the local camp. He testified that he had never had any health certificate blanks; that he knew the condition of the insured's health; knew that he had undergone an operation for the removal of his tonsils, but regarded him as in fairly good health. It is not claimed that the insured or his son who paid the assessments perpetrated any fraud upon the clerk of the local camp or the defendant in procuring the insured's reinstatement.

Under the plan of organization of the defendant association it collected the assessments through the clerks of the several local camps. That the clerk of the local camp was the agent of the defendant in doing what he did cannot be doubted under the decisions of this court. *Henton v. Sovereign Camp, W. O. W.*, 87 Neb. 552.

It is clear that the provisions of the by-laws respecting the conditions upon which a suspended member might be

reinstated are for the benefit of the association and may be waived by it. From the reports of the clerk of the local camp the defendant knew that the insured had been suspended. It also knew when the remittances were made, in payment of the assessments for January, February, and March, that the clerk was reinstating the insured, as otherwise there would be no purpose of remitting the money for these months. By being charged with the knowledge of its agent, the defendant knew that no certificate of good health had been furnished by the insured. Under these circumstances we think the defendant cannot now claim that the certificate was forfeited for the nonpayment of the assessments, or that the insured was improperly reinstated.

Under the facts before us we think the case falls within the rules announced in *Modern Woodmen of America, v. Colman,* 68 Neb. 660, *Pringle v. Modern Woodmen of America,* 76 Neb. 388, and *Henton v. Sovereign Camp, W. O. W.,* 87 Neb. 552. In the *Henton* case it was held: "Where the by-laws of a fraternal beneficiary association authorize the clerk of a local camp to collect arrearages from members who have been suspended for nonpayment of assessments, to restore their names to the membership list, and to report reinstatements to the sovereign camp, he is the agent of the association in performing those duties." And, further: "A fraternal beneficiary association may be bound by the action of a local camp clerk who collects arrearages from a member suspended for nonpayment of assessments and restores his name to the membership list without demanding or receiving a health certificate required by the by-laws, where the clerk acts with full knowledge that the member is sick at the time, and where there is no fraud on the latter's part."

It is urged by the defendant that the court erred in rendering a judgment requiring the defendant to pay $100 toward a monument to be erected over the grave of the insured. At the biennial session of the sovereign

camp held in July, 1919, as above stated, a by-law was also enacted which provided in substance that a member who continued to pay at the old rate after January 1, 1920, thereby consented to the annulment of that part of the certificate relating to monument benefits. At the time the insured became a member of the association he agreed, among other things, to be bound by such by-laws as then existed or which might thereafter be enacted. Under the circumstances disclosed by the record it seems that the by-laws enacted at the biennial session of 1919 relating to the scaling down of the amount to be paid upon certificates, and also the annulment of monument benefits, are reasonable, and that the insured was bound thereby. We think, therefore, that the court erred in rendering judgment for $100 for the erection of a monument.

It is next urged by the defendant that neither the insured nor the beneficiaries paid the assessments. We see no merit in this contention. Assuming that the payment was made without the knowledge of the insured or the beneficiaries, still it could be ratified by them. The fact that the beneficiaries are here insisting upon the payment of this certificate is a sufficient ratification of the act of their brother in paying the assessments.

From what has been said it follows that the court erred in including in the judgment $100 for a monument, but in all other respects the judgment is fully sustained. We think a new trial is entirely unnecessary, but the cause is remanded, with directions to enter judgment in conformity with the views herein expressed.

REMANDED, WITH DIRECTIONS.